IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

WILLIAM T. CARSLEY,

    Plaintiff,

v.                                                    No. 12-1102

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

---

ORDER GRANTING DEFENDANT'S OBJECTIONS TO REPORT AND
RECOMMENDATION, ADOPTING REPORT AND RECOMMENDATION ONLY TO THE
EXTENT IT RECOMMENDS REVERSAL OF THE COMMISSIONER'S
DETERMINATION, AND REVERSING AND REMANDING TO THE COMMISSIONER
FOR FURTHER CONSIDERATION

---

## I. INTRODUCTION

The complaint in this action was filed on May 1, 2012, by the *pro se* Plaintiff, William T. Carsley. On February 3, 2017, the matter was referred to United States Magistrate Judge Charmiane G. Claxton for a report and recommendation. (Docket Entry ("D.E.") 18.) On March 3, 2017, Judge Claxton recommended that the final decision of the Commissioner be reversed, the Plaintiff's waiver of overpayment of benefits be granted, benefits withheld from the claimant as a result of recoupment of overpayments be reimbursed, and judgment be entered pursuant to Sentence Three of 42 U.S.C. § 405(g) modifying the Commissioner's decision. (D.E. 19.) On March 16, 2017, the Commissioner filed timely objections to the magistrate judge's report and recommendation. (D.E. 20.) As no response to the Commissioner's objections has been filed and the time therefor has expired, this matter is ripe for decision.

## II. COURT'S REVIEW OF MAGISTRATE JUDGE'S DETERMINATION

When objections have been filed with respect to a report and recommendation of the magistrate judge, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). He "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). The district judge may not "simply concur" in the magistrate judge's findings, but must "conduct [his] own review in order to adopt the recommendations." *Fharmacy Records v. Nassar*, 465 F. App'x 448, 456 (6th Cir. 2012) (per curiam) (internal quotation marks omitted). "[T]he filing of an objection does not oblige the district court to ignore the report and recommendation; it requires the court to give fresh consideration to the finding objected to insofar as the objection impugns the integrity of the finding." *Id.*

## III. BACKGROUND

The Plaintiff began receiving disability insurance benefits ("DIB") on March 1, 1991.[1] On December 21, 2009, the Social Security Administration ("SSA") issued a notice informing him that he was overpaid in the amount of $27,135 for the period from March 2008 to November 2009. (Administrative Record ("AR") 74-77.) The claimant sought a waiver of the overpayment and, after a hearing before the Administrative Law Judge ("ALJ") on July 14, 2011, at which Carsley represented himself, the waiver was granted. (AR 22-26.) The ALJ concluded that, while the claimant was overpaid, he was not at fault in causing the overpayment and recovery of the payment defeated the purpose of Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*

---

[1] The nature of Carsley's disability is unclear from the record.

On November 17, 2011, the Appeals Council decided, *sua sponte*, to review the determination of the ALJ and agreed that Carsley had been overpaid, but found he was not without fault in the overpayment and denied the waiver. The instant appeal of the Appeals Council's determination followed.

IV. ANALYSIS

Where, as here, the Appeals Council grants review of a claim, its determination becomes the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999); *Walker v. Sec. of Health & Human Servs.*, 884 F.2d 241, 244 (6th Cir. 1989). The determination of the Commissioner must be affirmed if the correct legal standards were used and the decision is supported by substantial evidence. *Bowman v. Comm'r of Soc. Sec.*, ___ F. App'x ___, 2017 WL 1065553, at *3 (6th Cir. Mar. 21, 2017). "Substantial evidence exists if a reasonable mind might accept the relevant evidence as adequate to support" the decision. *Mueller v. Comm'r of Soc. Sec.*, ___ F. App'x ___, 2017 WL 1065550, at *1 (6th Cir. Mar 21, 2017) (per curiam). "The substantial-evidence standard presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). "Therefore, if substantial evidence supports the [Commissioner's] decision, th[e] [c]ourt defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Id.* (internal quotation marks omitted). When considering whether substantial evidence supports the Commissioner's decision, the district courts "do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

Section 404 of the Social Security Act permits the Commissioner to recover from persons to whom Social Security benefits have been overpaid those monies in excess of the correct amount. 42 U.S.C. § 404(a)(1). The statute further provides, however, that recovery may not be had from "any person who is without fault if such . . . recovery would defeat the purpose of [the statute] or would be against equity and good conscience." 42 U.S.C. § 404(b)(1); *see also* 20 C.F.R. § 404.506(a).

The threshold inquiry in determining whether an overpayment of benefits should be waived is the "fault" of the beneficiary. *Watson v. Sullivan*, 940 F.2d 168, 171 (6th Cir. 1991) (per curiam); *Chavez v. Comm'r of Soc. Sec.*, No. 1:14-cv-532, 2015 WL 1730371, at *2 (S.D. Ohio Apr. 14, 2015), *report & recommendation adopted* 2015 WL 4540138 (S.D. Ohio July 27, 2015). "Although the [SSA] may have been at fault in making the overpayment, that fact does not relieve the overpaid individual . . . from whom the [SSA] seeks to recover the overpayment from liability for repayment if such individual is not without fault." 20 C.F.R. § 404.507. As explained in the regulation, fault depends "upon whether the facts show that the incorrect payment to the individual . . . resulted from . . . [a]n incorrect statement made by the individual which he knew or should have known to be incorrect"; "[f]ailure to furnish information which he knew or should have known to be material"; or "acceptance of a payment which he either knew or could have been expected to know was incorrect." *Id.* Section 404(b) provides that "[i]n making for purposes of [analyzing fault] any determination of whether any individual is without fault, the Commissioner of Social Security shall specifically take into account any physical, mental, educational, or linguistic limitation such individual may have[.]" 42 U.S.C. § 404(b)(2); *see also* 20 C.F.R. § 404.507 (the Commissioner "will consider all pertinent circumstances,

including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations . . . the individual has").

A conclusion that the claimant was not without fault does not require a finding of bad faith; instead, an overpayment may arise from an honest mistake. *Morgan v. Finch*, 423 F.2d 551, 553 (6th Cir. 1970); *Quaynor v. Comm'r of Soc. Sec.*, Civil Action No. 14-12258, 2015 WL 9487846, at *4 (E.D. Mich. Dec. 9, 2015), *report & recommendation adopted* 2015 WL 9478026 (E.D. Mich. Dec. 29, 2015). It is the burden of the claimant to demonstrate that he is without fault before a benefits overpayment can be considered waived. *Watson*, 940 F.2d at 171. "The question of fault is one of fact and as such is subject to the substantial evidence standard of review." *Doan v. Sec. of Health & Human Servs.*, No. 86-5956, 1987 WL 36143, at *1 (6th Cir. July 7, 1987) (per curiam); *Hassett v. Comm'r of Soc. Sec.*, No. 1:12cv419, 2013 WL 3834372, at *4 (W.D. Mich. July 24, 2013).

"The decision which must be reached in a fault determination is highly subjective, highly dependent on the interaction between the intentions and state of mind of the claimant and the peculiar circumstances of his situation." *Piskorek v. Colvin*, No. 13 CV 3831, 2014 WL 5152565, at *7 (N.D. Ill. Oct. 7, 2014). The determination of fault requires the ALJ, or the Appeals Council in this case, to evaluate whether a reasonable person in the claimant's own circumstances, and with whatever limitations he may have, could believe he was entitled to continued benefits. *Harrison v. Heckler*, 746 F.2d 480, 482 (9th Cir. 1984); *Ducharme v. Astrue*, Civil Action No. PWG-08-2698, 2012 WL 907777, at *3 (D. Md. Mar. 15, 2012).

Further, "[w]here an individual . . . accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration . . . with respect to the interpretation of a pertinent provision of the Social Security Act or regulations

pertaining thereto, . . . such individual, in accepting such overpayment, will be deemed to be without fault." 20 C.F.R. § 404.510a. "[W]here an individual demonstrates satisfaction of 20 C.F.R. § 404.510a, the individual has also satisfied the 'without fault' requirement of 42 U.S.C. § 404(b)." *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 393 n.2 (6th Cir. 2005). Adjustment or recovery is waived in the situation described in § 404.510a "since it will be deemed such adjustment or recovery is against equity and good conscience." 20 C.F.R. § 404.512(a). Nonetheless, the claimant may be determined to be at fault for accepting overpayment after receiving misinformation "if the evidence shows he should have recognized that his changed circumstances warranted notice to Social Security, or at least an inquiry about any effect of that change on his eligibility." *Gladden v. Callahan*, 139 F.3d 1219, 1223 (8th Cir. 1998).

In the hearing before the ALJ, the claimant offered testimony, which the ALJ found credible, that, prior to beginning a part-time job at a parts store, he went to a Social Security office where an employee told him he could make a certain amount per year without endangering his benefits and, as a result of that advice, he tried to stay under that amount.[2] However, he was misinformed, as the permissible amounts were based on *monthly* earnings, rather than *annual* income. According to the claimant, "I was told that I could make so much per year, so that's what I was going by. But, actually, it's so much per month. . . . And I didn't know that." (AR 246.)

The ALJ found as follows:

> I find that the claimant was undoubtedly told that he could engage in work during his Trial Work Period and his Extended Period of Eligibility with certain earnings limitations. However, given the complexity and month-by-month calculations involved in determining which months constitute a trial work period and when an extended period of eligibility starts and ends, I also find that it was reasonable for

---

[2]It is not entirely clear from the record when this conversation occurred; however, it apparently took place at some time prior to Plaintiff's attempts at work in 2004.

> the claimant to rely on the information he was given by the Social Security agent while he continued to work for some five years without being advised that his disability status was in danger because of his earnings.
>
> There is no evidence that the Social Security Administration gave the claimant any updated information to clarify the amount of earnings he could earn without losing his disability status, or that the extent of his ongoing earnings placed his disability status in jeopardy. The claimant was justified in relying on the information he had been given.

(*Id.* at 25.)

As noted above, the Appeals Council disagreed with the no-fault determination, finding that

> the record shows that the claimant was notified by the [Social Security] Administration in April and May of 2007 that he had completed a trial work period in August 2004 and the amount he could earn and still receive disability benefits during the extended period of eligibility. At the time of the notices, the claimant was working for Three Little Pigs Bar-B-Q. In the Notice of Important Information dated May 15, 2007, the claimant was advised that earnings over $900 a month was considered to be substantial gainful work activity [("SGA")]. The record shows that the claimant earned $1,140.39 in March 2008 and $1,013.76 in April 2008, which is well over the $900 considered to be SGA in the 2007 n[ot]ice.
>
> Prior to February 2008, the month the claimant's entitlement to benefits terminated, he knew or should have known the monthly amount he could earn and still receive benefits, and therefore accepted payments which [he] knew or should have known were incorrect.

(*Id.* at 12 (internal citations to the record omitted).)

The Commissioner argues in its objections to the report and recommendation that the Appeals Council's conclusion that Carsley was not without fault with respect to the overpayment was supported by substantial evidence, namely the two 2007 written communications (collectively, the "2007 Letters") referred to in the Appeals Council's opinion.[3] The first letter is undated but appears from the record to have been sent in April 2007. Therein, the SSA advised

---

[3] Copies of these letters are contained in the administrative record at pages 37 and 42.

the Plaintiff that his work and earnings indicated that his disability ended because of substantial work in September 2004, based on employment at Three Little Pigs Bar-B-Q and Kelly Services in 2003 and 2004. The letter also explained as follows:

> Your disability ends if your work activity shows your ability to do substantial work.
>
> * * *
>
> *Generally*, substantial work is physical or mental work a person is paid to do. Work can be substantial even if it is part-time. To decide if a person's work is substantial, we consider the nature of the job duties, the skill and experience needed to do the job, and how much the person actually earns.
>
> A person's work may be different than before his or her health problems began. It may not be as hard to do and the pay may be less. However, we *may* still find that the work is substantial under our rules.
>
> *Usually*, we find that work is substantial if gross *monthly* earnings average more than the following amounts:
>
> | | |
> |---|---|
> | In 2007 | $900 |
> | * | * * |
> | in 2005 | $830 |
> | in 2004 | $810 |
> | in 2003 | $800 . . . |

(*Id.* 38-39 (emphasis added).) The letter indicated that the "usual" or "general" rules may not apply if there was evidence to suggest the claimant did not fully earn the salary paid or if he had impairment-related work expenses, noting that no such evidence had been submitted by Carsley. (*Id.* 37.) The agency requested any additional information the claimant wished to provide prior to making its final decision on whether to discontinue benefits.

The second correspondence, dated May 15, 2007, informed Plaintiff of the SSA's final determination that his disability status ended as of September 2004 and contained the same explanation set forth above with respect to the first communication. Both missives provided contact information in the event Plaintiff had questions. It does not appear from the record that

8

he ever contacted the agency for clarification or with questions with regard to whether substantial work was based on monthly or annual earnings.

It was the conclusion of the magistrate judge that the Appeals Council committed reversible error in finding Carsley not without fault based on the 2007 Letters.[4]  Specifically, the magistrate judge criticized the agency's use of the terms "generally," "usually," and "may" as "clearly suggest[ing] that there is a discretionary component requiring consideration of the other enumerated factors, including assessing the nature of the job duties and the skill and expertise needed but leav[ing] Plaintiff woefully lacking in meaningful guidance as to how such discretion would ultimately be exercised."  (D.E. 19-1 at PageID 124-25.)  However, the nature of the job duties and skill and experience necessary in determining what is and what is not substantial work are not at issue.  Rather, the question as the Court sees it is whether the Appeals Council erred in determining that Carsley should have recognized from the references exclusively to monthly earnings in the 2007 Letters that clarification may be in order.

As noted above, the Court must affirm the Commissioner's decision if there is substantial evidence to support it.  Here, the Appeals Council found the claimant not without fault in light of the 2007 Letters' references to the amounts he could earn on a monthly basis and continue to receive benefits.[5]  There is no evidence in the record that Carsley made any effort to question how the calculation was made or the inconsistency between the agency's monthly calculation as evidenced in the 2007 Letters and what he had been told previously.  Thus, the Court cannot find that the Appeals Council's determination on this question, while rendering a harsh result, was not

---

[4]The Commissioner does not appear to take issue with the Plaintiff's assertion that he was misinformed by an SSA employee or agent.

[5]The claimant has not contended that he did not receive the letters.

supported by substantial evidence. The report and recommendation is rejected to the extent it found otherwise.[6]

However, the Court does agree with the magistrate judge's ultimate conclusion and recommendation that the Commissioner's decision should be reversed, albeit for a different reason. The Appeals Council, and the ALJ for that matter, failed to take into consideration Carsley's "age and intelligence, and any physical, mental, educational, or linguistic limitations," as is required under § 404.507 and, thus, the correct legal standards for determining whether waiver of the overpayment was appropriate were not employed.

For purposes of this discussion, the Court is mindful of the fact that, as noted above, Carsley was not represented at the hearing before the ALJ. Nor did he have counsel who could have provided any evidence to the Appeals Council.[7] "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims,* 530 U.S. at 110-11. Where a claimant is unrepresented before the ALJ, "an administrative law judge's basic obligation to develop a full and fair record rises to a special duty . . . [to] scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Lashley v. Sec. of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983) (internal citations omitted). "This heightened duty arises from the remedial nature of the Social Security Act, as well as from the recognition that the ultimate responsibility for ensuring that every claimant receives a full and fair hearing lies with the administrative law judge." *Brewer v. Comm'r of Soc. Sec.*, Case No. 5:16-cv-137, 2016 WL

---

[6]In light of this decision, the Court need not consider the findings of the magistrate judge with respect to whether recovery of the overpayment would defeat the purposes of the Social Security Act or be against equity and good conscience in connection with the misinformation claim. *See Quaynor*, 2015 WL 9487846, at *6 n.7.

[7]According to the record, Attorney Kathleen Caldwell represented Carsley in 2009 and 2010 but apparently withdrew sometime prior to the hearing before the ALJ.

7634431, at *10 (N.D. Ohio Dec. 12, 2016), *report & recommendation adopted* 2017 WL 27260 (N.D. Ohio June 3, 2017).  However, the "mere fact that a claimant was unrepresented is not grounds for reversal.  Rather, [the district court is to] examine each case on its own merits to determine whether the ALJ failed to fully develop the record and therefore denied the claimant a full and fair hearing." *Duncan v. Sec. of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986) (internal citation omitted); *see also Long v. Soc. Sec. Admin.*, No. 3:15-cv-00751, 2016 WL 6583649, at *8 (M.D. Tenn. Nov. 4, 2016).

While, in the "Applicable Law" section of her opinion, which was incorporated into the decision of the Appeals Council, the ALJ stated that, in determining whether Carsley was at fault, she would consider the § 404.507 circumstances, there is no indication or mention whatever that any such consideration actually occurred, either on the part of the ALJ or the Appeals Council.  Moreover, the ALJ asked no questions of the claimant during the hearing concerning any age-related, intellectual, physical, mental, or educational limitations he may have had.  These circumstances, along with the lack of information in the record concerning the underlying disability for which Carsley was initially awarded DIB; information in the transcript indicating that the jobs he performed during his period of disability, at Kelly Services, a temporary staffing service, and as a helper at Three Little Pigs Bar-B-Q, did not require any heightened mental acuity, intelligence, or advanced education; and the absence of counsel to bring any such limitations to the attention of the ALJ or the Appeals Council, compel the Court to conclude that the final decision of the Commissioner can simply not be meaningfully assessed on judicial review.  *See Masotti v. Comm'r of Soc. Sec.*, 14-CV-5081 (SLT), 2016 WL 5404632, at *5-6 (E.D.N.Y. Sept. 27, 2016) (absent findings relative to the existence of any of the limitations enumerated in § 404.507, especially where the claimant was unrepresented by

11

counsel, the record was not sufficiently developed to permit meaningful review); *Martinez v. Astrue*, Civil Action No. 11-cv-00654-WYD, 2012 WL 1045230, at *8 (D. Colo. Mar. 28, 2012) (ALJ's failure to inquire into or consider claimant's education or intelligence in fault determination or to develop the record on the issue, as she was unrepresented, required remand for further factfinding); *Hughes v. Barnhart*, No. Civ.A.03-174-A-1, 2004 WL 3247622, at *3-4 (M.D. La. May 27, 2004) (ALJ cited the applicable regulation and stated that he considered the § 404.507 factors, but mentioned no evidence upon which he based his conclusion that the claimant was not without fault; thus, the decision failed to provide an adequate basis upon which the court could determine whether the correct legal principles were followed or whether substantial evidence supported the decision, rendering remand justified).

## *CONCLUSION*

Based on the foregoing, the objections of the Commissioner to the report and recommendation relative to the Plaintiff's misinformation claim are GRANTED. The report and recommendation is adopted only to the extent it recommended that the Commissioner's determination be reversed. The determination of the Appeals Council is REVERSED and this matter is REMANDED to the Commissioner for reevaluation of the claimant's request for waiver of overpayment recovery and further development of the record as indicated herein.

IT IS SO ORDERED this 16th day of June 2017.

<u>s/ J. DANIEL BREEN</u>
UNITED STATES DISTRICT JUDGE